[No. 24394-2-I. Division One. October 29, 1990.]

*In the Matter of the Dependency of* C.T.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent,* v. BARBARA OSBORNE–TANNER, *Appellant.*

---

[4]*Curwood,* at 232; *In re Smiley,* 96 Wn.2d 950, 954, 640 P.2d 7 (1982).

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Marie Westermeier, Assistant,* for respondent.

RINGOLD, J.*—Barbara Osborne–Tanner appeals the trial court's order terminating parental rights to her daughter C.T. Basically she contends that the evidence is insufficient to support the order of termination. We affirm.

Barbara and Ken Tanner, C.T.'s father, had been hospitalized at Everett General Hospital in connection with mental health problems when they met. C.T. was born on August 16, 1986, 1 year after their marriage.

A dependency petition was filed by the Department of Social and Health Services (DSHS) on May 1, 1987, alleging that C.T.: was suffering from failure to thrive syndrome; was undernourished; had poor hygiene and extensive diaper rash; was developmentally delayed, and that her parents were schizophrenic with a history of mental health problems. C.T. had previously been removed from the home under a custody order. An agreed order of dependency was entered July 30, 1987. The agreed disposition order entered on the same date found that it was not possible for either parent to assume full care of C.T. at that time. The disposition order also required, as conditions for the return of C.T., that the parents show evidence of mental health treatment; evidence of appropriate living conditions; and to allow a Child Protective Services (CPS) caseworker to visit inside the residence. C.T. was placed in foster care and visitation was provided twice a week.

An agreed dependency review order was entered on November 5, 1987. This order provided for additional services to be provided to the parents in the way of referral for counseling and case management for their mental health, housing and financial needs. Another agreed dependency

---

*Judge Solie M. Ringold is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

review order was entered on January 6, 1988, which provided that the parents were to be offered homemaker services.

A hearing was held in connection with a dependency review on June 22, 1988. In the order the court noted that there had been no visitation between C.T. and the parents since April 1988.

The petition for termination of parental rights under consideration here was filed by DSHS on November 4, 1988. The petition stated as reasons for termination of the parental rights the conditions alleged in the dependency petitions and further alleged, *inter alia,* that the parents had: continued to have severe mental health problems requiring periodic hospitalization; failed to comply with the disposition plan set forth in the agreed disposition order; and failed to take advantage of the various services offered.

Trial was held on the termination petition in June 1989. At the trial, Barbara admitted that she had been diagnosed as suffering from schizophrenia and/or depression and that she had been hospitalized between five and nine times since 1978, most recently from April to August of 1988. Most of these hospitalizations had been involuntary commitments. Barbara also stated that she did not feel that she had ever needed to be hospitalized and did not agree that C.T. had been ill when she was removed from the home.

Carol Bryant was the public health nurse who was involved with C.T. from her birth in 1986 through April of 1987, and had provided home visits. In February of 1987 home visits had been terminated at Barbara's request. In April, Ms. Bryant received phone calls from family members which prompted her to make an unannounced home visit. At that visit she found C.T. in a wet, messy diaper. C.T. appeared to be undernourished and dehydrated, could not bear weight on her legs and would not smile or respond. Barbara was completely unresponsive and was unaware that anything was wrong with C.T. Ms. Bryant referred the case to CPS.

Linda Rice was a pediatric nurse practitioner who had initially seen C.T. on her second week well–child examination. She examined C.T. at 2 weeks, 2 months, 4 months and 6 months. Her next visit with C.T. was on April 29, 1987, for an examination arranged by CPS following the referral by Ms. Bryant. She noted that the conditions of both C.T. and Barbara had significantly changed. C.T. had lost abilities she had previously achieved in terms of developmental milestones, had signs of extensive diaper rash, was protein depleted, could not stand, and her weight was down significantly. Barbara was agitated but unresponsive. Ms. Rice again saw C.T. and Barbara approximately 1 week later. Barbara was wearing the same clothes as at the earlier examination, had apparently not bathed or cleaned herself since then and was totally uncommunicative and unemotional. Ms. Rice testified that C.T. had failed to develop stranger anxiety, and related that failure to neglect situations where a child is never allowed to develop a trust relationship with the parents.

Carol Sandoval was the CPS caseworker on C.T.'s case from September 1988 to the time of trial. She stated that Barbara had denied that there had ever been any problem in caring for C.T. Ms. Sandoval opined that Barbara's ability to care for C.T. had not improved, primarily because of her failure to achieve mental health stability. Ms. Sandoval testified that throughout DSHS's involvement with C.T.'s case either one or both parents had been hospitalized or exhibiting mental health problems. She felt that C.T.'s needs for security would not allow for the time needed for Barbara to achieve mental health stability and to then begin work on parenting skills. She suggested that, in her opinion, C.T. now needed the security of a permanent placement.

Other CPS caseworkers also testified concerning the services that had been offered to Barbara and about her refusal or failure to make use of those services. C.T.'s foster father testified that visitations through the first year of dependency by the parents had not been consistent.

The trial court found that DSHS did everything it could in offering services to Barbara, but, because of the nature of her mental illness, the court felt that no services were available which could correct her parenting deficiencies in the foreseeable future. Because of the needs of the child to establish stability in a home environment, the court found it in the best interest of the child to terminate parental rights.

## THE STATUTES

Former RCW 13.34.180 states in pertinent part:

A petition seeking termination of a parent and child relationship may be filed in juvenile court by any party to the dependency proceedings concerning that child. Such petition shall conform to the requirements of RCW 13.34.040 and shall allege:

(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and

(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2); and

(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home[.]

Former RCW 13.34.190 provides:

After hearings pursuant to RCW 13.34.110, the court may enter an order terminating all parental rights to a child if the court finds that:

(1)(a) The allegations contained in the petition as provided in RCW 13.34.180 (1) through (6) are established by clear, cogent, and convincing evidence; or (b) RCW 13.34.180(3) may be waived because the allegations under RCW 13.34.180 (1), (2), (4), (5), and (6) are established beyond a reasonable doubt; . . . and

(2) Such an order is in the best interests of the child.

## STANDARD OF REVIEW

■ *Krause v. Catholic Comm'ty Servs.*, 47 Wn. App. 734, 746, 737 P.2d 280, *review denied*, 108 Wn.2d 1035 (1987), it was stated that the standard of review regarding an order terminating parental rights requires that:

Clear, cogent and convincing evidence must support an order terminating parental rights. That is, the ultimate fact in issue must be shown to be "highly probable." Thus the question is whether substantial evidence supports the challenged findings of fact in light of the "highly probable" test.

(Citations omitted.)

Findings of fact by a trial court will not be disturbed by the appellate court if supported by substantial evidence. There is no contention made that the trial court required evidence to be less than clear and convincing to establish its findings. The question on appeal is whether there is substantial evidence to support the findings in light of the highly probable test. *In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). *See In re Kier*, 21 Wn. App. 836, 839, 587 P.2d 592 (1978) (substantial evidence is sufficient (footnote 1)).

In respect to RCW 13.34.180(4), the court must find:

That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided[.]

On appeal Barbara challenges the sufficiency of the evidence to support the trial court's ultimate finding required by RCW 13.34.180(4).

## CONSIDERATION OF PREDEPENDENCY SERVICES

Finding of fact 2.4(A) states:

Prior to the placement of the child in foster care, her parents were provided supportive services through the University of Washington Hospital. Those services included social work services, pediatric nurse services, and coordination with other community services including visiting public health nurse services, and the WIC program.

■■ Barbara argues that the trial court wrongly considered these services since they had been obtained by the

parents on their own prior to the institution of the dependency proceedings. The record does not support the assertion that the parents obtained the services on their own. The question here, however, is whether the predependency services were properly considered by the trial court. The State contends that the phrase "and all necessary services, reasonably available, capable of correcting the parental deficiencies" would encompass services offered prior to dependency proceedings. The overriding goal of a termination proceeding is to serve the best interest of the child. *In re A.W.*, 53 Wn. App. 22, 33, 765 P.2d 307 (1988), *review denied*, 112 Wn.2d 1017 (1989). The consideration of any services offered prior to deprivation proceedings could be reasonably considered as bearing on the potential correction of parental deficiencies. The trial court did not err.

## BARBARA'S MENTAL CONDITION

The challenges to the remaining findings of fact concerning RCW 13.34.180(4) are addressed to the trial court's assessment of Barbara's mental illness as reflected in these findings. The trial court found that because of the nature of Barbara's illness (schizophrenia), and the likelihood that she would again "decompensate" in the future, there were no services that could be offered that had the prospect of improving her parenting capabilities in the near future.

Barbara maintains that the record contains no support for these findings, that the record contains no indication as to the nature of the illness, and that it contains nothing to suggest the future course of the illness. Barbara acknowledges that *In re Ramquist*, 52 Wn. App. 854, 765 P.2d 30 (1988), *review denied*, 112 Wn.2d 1006 (1989) supports termination where the record establishes the chronic mental illness of the parents. She attempts, however, to distinguish the present case from *Ramquist* on the basis that the finding of mental illness there was supported by expert testimony while no "expert" testimony was presented in her case.

498

The State counters with the claim that there is ample evidence to support the court's finding that Barbara is suffering from schizophrenia. At trial Barbara stated that she had been diagnosed as schizophrenic, and Barbara Sellevold, the mental health aide, testified to this diagnosis. Barbara now challenges Sellevold's credentials to give this testimony. No objection was made to Sellevold's qualification at trial, *see In re Roberts,* 46 Wn. App. 748, 756, 732 P.2d 528 (1987), and the only contention made with respect to Sellevold's testimony was by raising a patient/therapist privilege objection.

Additionally, regardless of the label affixed to Barbara's mental illness, there was, contrary to the assertion on appeal, extensive testimony concerning the extent, nature and history of her mental illness. Barbara acknowledged between five and nine hospitalizations since 1978, mostly involuntary, and stated she did not feel she ever needed to be hospitalized. The CPS caseworkers, the public health nurse who had visited in the home, the pediatric nurse practitioner, a hospital social worker and the foster father all testified as to the nature of Barbara's behavior, which could be classified as mental illness. Where the evidence establishes mental illness bearing on the capacity to function as a parent, it is not material what label is put on that illness. *In re Aschauer,* 93 Wn.2d 689, 694, 611 P.2d 1245 (1980).

AVAILABILITY OF OTHER SERVICES

Supporting the trial court's findings that there were no services that could be provided to Barbara capable of correcting the parental deficiencies is the extensive evidence that Barbara failed to understand the nature of her own condition or the risk to C.T. In her testimony, Barbara not only denied that she had ever needed hospitalization, she also stated that she did not agree that C.T. had been in a seriously compromised condition when she was removed from home. The public health nurse who made the decisive home visit in April 1987 stated that neither Barbara nor

the father were aware that anything was wrong with C.T., though she was dehydrated, malnourished and had lost the ability to bear weight on her legs. Barbara had also told the current CPS caseworker that she did not feel she had any significant problems in caring for C.T. This lack of insight and denial of her mental health problems are relevant considerations in determining whether problems were likely to reoccur and whether there is little likelihood that the parental deficiencies will be remedied in the near future. *Krause,* 47 Wn. App. at 747–48.

There is also further direct testimony by the CPS caseworkers that: (1) no other services beyond those previously offered could be helpful in assisting Barbara in correcting her parental deficiencies; (2) Barbara had expressed no interest in getting services or had refused services; and (3) all appropriate services had been offered. Carol Sandoval testified that mental health stability would need to be achieved and maintained before other services would be of practical use. There is substantial evidence in the record that all reasonably effective services had been offered, but, because of Barbara's unwillingness or inability to make use of them, advantage had not been taken. *See In re P.D.,* 58 Wn. App. 18, 26–27, 792 P.2d 159, *review denied,* 115 Wn.2d 1019 (1990); *Ramquist,* 52 Wn. App. at 861; *In re Ferguson,* 41 Wn. App. 1, 6, 701 P.2d 513, *review denied,* 104 Wn.2d 1008 (1985). Although Barbara now disputes this evidence she can point to no contrary testimony at trial and argues only that the nature of her mental illness was not established.

RCW 13.34.180(5) and (6) require the court to find:

> (5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and
> (6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home[.]

Barbara's challenges on appeal addressed to the trial court's finding of fact supporting the ultimate findings required as to RCW 13.34.180(5) and (6) are also premised

on the assertion that there is no evidence in the record on which the trial court could find that Barbara's mental illness was such as not to be amenable to remedy in the near future and was such as to keep her from being able to provide a proper home for C.T. The discussion of the evidence of the nature of the mental illness in connection with RCW 13.34.180(4) supports the court's findings against these challenges.

Barbara also specifically challenges finding of fact 2.5(b), which states:

> Between April and August of 1988, this child had no contact with her parents when they both had decompensated and were hospitalized for their mental illness. This length of time with no contact was devastating to the child and when visits did resume the child was naturally confused and uncertain as to her future. This court finds that there is no likelihood that this child could return to the parents in the near future, and because of the vulnerability of this child, we cannot wait or try any experiments with [C.T.'s] future and security in the balance.

Barbara's sole point here is that there was no evidence that C.T. had been "devastated" by the absence. On this point she is correct, but elimination of the adjective is not material.

Although Barbara assigned error to finding of fact 2.7, which stated that termination was in the best interest of the child, she failed to argue it in her brief and therefore has abandoned the challenge. *In re Ferguson,* 41 Wn. App. at 4.

We find that substantial evidence supports the trial court's determination that: (1) all services reasonably available that were capable of correcting Barbara's parental deficiencies within the foreseeable future had been offered; (2) there is little likelihood that conditions would be remedied in the near future; and (3) the continuation of the parent–child relationship would diminish the prospects for C.T.'s early integration into a stable and permanent home.

Accordingly, the order of the trial court terminating Barbara's parental rights is affirmed.

SCHOLFIELD and BAKER, JJ., concur.

Review denied at 116 Wn.2d 1015 (1991).