

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Dependency of ) No. 74641-3-I (consolidated
) (with No. 74642-1-I)
E.A.S. DOB: 09/16/03 )
E.M.E.S. DOB: 06/22/05, ) DIVISION ONE
)
Minor Children, )
)
STATE OF WASHINGTON )
DEPARTMENT OF SOCIAL AND )
HEALTH SERVICES, )
)
Respondent, )
)
v. )
) UNPUBLISHED OPINION
CHRISTIANA OSTRANDER, )
)
Appellant. )
_____ ) FILED: October 3, 2016

MANN, J. — After a dependency of more than a year and a three-day trial, the juvenile court entered an order terminating the appellant mother's parental rights to two of her children. The mother argues that the evidence does not support the court's findings that: (1) the Department of Social and Health Services (the Department) provided all necessary services to correct her parental deficiencies; (2) there was little likelihood that conditions would be remedied so that the children could be reunited with

the mother in the foreseeable future; (3) the mother did not prioritize the children; and (4) termination of parental rights was in the children's best interest. We conclude that substantial evidence supports the court's findings of fact and those findings support the order of termination. We affirm.

## FACTS

E.A.S. was born on September 16, 2003. His sister, E.M.E.S., was born on June 22, 2005. In March 2014, when the children were ten and eight years old, they were removed from their mother's care.[1] The removal was based on multiple concerns including: concerns about drug use by the mother and others in the home; the frequent presence of multiple people, including strangers, in the home; the mother's mental health; lack of parental supervision and food in the home; and the school attendance of one of the children. The court entered an agreed order of dependency as to both children in July 2014. In that order the mother stipulated that, in addition to a lack of suitable housing, she had "substance abuse issue[s]" that needed to be addressed.[2] The dependency order required the mother to obtain a drug and alcohol evaluation and follow treatment recommendations, and to obtain a psychological evaluation with a parenting component. The court also ordered the mother to participate in mental health counselling, parenting classes, random urinalysis (UA) testing, and twice weekly sober support meetings.

---

[1] A third child was removed from the mother's care at the same time. That child was returned to the care of her father and the dependency action with respect to her was dismissed.

[2] Exhibit (Ex.) 7.

The children were placed in the care of the children's maternal grandmother who lives in Snohomish County, Washington. Nevertheless, despite her awareness that it might impede reunification efforts, within a few months the mother relocated from Snohomish County to Southwest Washington. The mother maintained that moving would enable her to find stable housing and have support from family and friends. The mother's housing plans fell though, however, and she "house hopped" for approximately eight months in the Vancouver, Washington area.[3]

After she moved, the mother did not exercise her weekly visitation consistently. Several visitation supervisors withdrew because of the mother's sporadic attendance. Several hundred dollars' worth of train tickets purchased by the Department to transport the mother to Snohomish County for her visitation went unused.

In January 2015, the mother obtained part-time employment. In March of 2015, she began a relationship with Shawn Dieter and moved into a two-bedroom mobile home he shared with his daughter in Washougal, Washington. The same month, the mother began working full-time transporting cars for auction.

The only services required by the dependency order that the mother completed were evaluations. The chemical dependency evaluator diagnosed the mother with methamphetamine dependence, marijuana dependence, possible opiate dependence, and recommended intensive outpatient treatment. Within the first few months after the children were removed from her care, the mother submitted several urine samples that tested positive for methamphetamines, opiates, and cannabis. Her subsequent tests

---

[3] RP (Nov. 16, 2015) at 14.

were negative for drugs, though they were sporadic and she missed or declined a number of scheduled UA tests.

Social workers made referrals for drug treatment, parenting classes, and mental health counseling both in Everett and Vancouver, Washington. The mother began drug treatment in August 2014 and shortly after was deemed not amenable to treatment and discharged. The treatment consisted of four sessions per week and she attended a total of five sessions. The mother later participated in treatment between November and April of 2014. She attended thirteen treatment sessions, but maintained that she did not have a drug addiction and declined to provide urine samples on several occasions. She elected not to continue treatment. According to one treatment provider, because of her failure to recognize that she needed treatment, the mother was not engaged in the treatment and made no progress.

A clinical psychologist evaluated the mother in 2014. He diagnosed her with post-traumatic stress disorder (PTSD) and depressive disorder. The evaluator was also concerned about the mother's untreated drug issues and possible borderline personality disorder. In addition to mental health counselling to work on depression and PTSD issues, the evaluator recommended a medication evaluation, intensive outpatient drug treatment, dialectical behavior therapy, a sober support group, and parenting classes. The mother attended only one session of mental health counselling following the evaluation.

In June 2015, the Department filed a petition to terminate the mother's parental rights.[4] At the time of the November 2015 trial on the Department's petition, the mother was still living with Dieter and working part time. Both the mother and Dieter acknowledged that their current housing would no longer accommodate them if the children were returned to the mother. The mother also acknowledged that she previously stipulated to having a substance abuse problem, but adamantly denied that this was the case. Even though the opiate result indicated the presence of morphine, not codeine, the mother insisted that she tested positive for opiates because of medication she took to treat bronchitis. The mother further testified that she tested positive for methamphetamine because her former boyfriend put the drug in her coffee without her knowledge because he was "mad" at her.[5] The mother stated that she only agreed that she had a drug problem for purposes of the dependency because she was "under the impression" that doing so would allow her more time to meet the requirements in order to reunite with her children.[6] She testified that she believed her children were removed from her care because she made the social worker "upset."[7]

Although she disagreed with the treatment recommendation, the mother testified that she participated in drug treatment in 2014 and 2015. She said she was unable to complete treatment in 2014 because of health problems and that she discontinued treatment in 2015 because she "felt that finding [a] stable living environment and a full-

---

[4] The petition also sought to terminate the parental rights of the children's biological father. The court later found the father to be in default and his parental rights were terminated by an August 2015 order. He is not a party to this appeal.

[5] RP (Nov. 18, 2015) at 405.

[6] RP (Nov. 16, 2015) at 22.

[7] RP (Nov. 16, 2015) at 21.

time income was more important than doing treatments."[8] Instead, she said that since the beginning of 2015 she has had a sponsor, who is also a personal friend, with whom she meets in person or by telephone approximately twice a week. The mother explained that she has a sponsor only because the Department required her to do so. Shortly before trial, the mother completed an updated drug and alcohol assessment and claimed that according to that updated evaluation, no drug treatment was recommended. She did not acknowledge that the most recent evaluator issued an amended report recommending intensive outpatient drug treatment based upon information provided by the Department that she failed to divulge.

The mother agreed that she had mental health issues including depression, social anxiety, PTSD, and that she takes medication to treat depression. She said that she participated in only one session of mental health counselling because it conflicted with her "schedule" and it was not possible for her to be in "two places at once."[9] The mother also testified that she was not able to complete parenting classes due to health issues and explained that she missed numerous urinalysis tests because of "schedule conflicts."[10]

Four social workers were assigned to the case during the dependency period. According to their testimony, it was apparent that the mother loved the children and she continued to visit them throughout the dependency, but her visitation was not consistent and her engagement in the services offered by the Department was minimal. According to the social worker assigned to the case at the time of trial, the mother had not made

[8] RP (Nov. 16, 2015) at 25.
[9] RP (Nov. 16, 2015) at 27-28.
[10] RP (Nov. 16, 2015) at 28.

any progress toward correcting her parental deficiencies. She failed to comply with the court's dependency order and displayed a "lack of insight" regarding the issues that led to the dependency.[11]

The psychologist who evaluated the mother testified about numerous personality and psychological factors that would negatively affect the mother's ability to safely parent. He noted that while the mother professed to be family-centered, she failed to recognize behaviors that were harmful to herself and the children. Due to her untreated substance abuse, mental health issues, and poor decision-making, the evaluator did not believe the mother was capable of safely and appropriately caring for her children. The psychologist testified that his prognosis for the mother was "guarded," given her denial, tendency to blame others, and inaction with regard to addressing the safety issues and deficiencies that led to the Department's involvement.[12] He testified that following through on the recommendations with regard to drug treatment, parenting classes, and counselling would be necessary to "even get on the path to reintegration."[13]

The court entered orders terminating the mother's parental rights to both children.[14] She appeals.

## ANALYSIS

The mother challenges the termination order, arguing that the Department failed to present sufficient evidence to support several of the juvenile court's findings.

---

[11] RP (Nov. 16, 2015) at 137.
[12] RP (Nov. 17, 2015) at 192, 209, 212-13.
[13] RP (Nov. 17, 2015) at 197.
[14] The court entered two separate orders that set forth identical findings.

Parents have fundamental liberty and privacy interests in the care and custody of their children. In re Welfare of A.J.R., 78 Wn. App. 222, 229, 896 P.2d 1298 (1995). Thus, terminating parental rights should be allowed only "'for the most powerful reasons.'" A.J.R., 78 Wn. App. at 229 (internal quotation marks omitted) (quoting In re Sego, 82 Wn.2d 736, 738, 513 P.2d 831 (1973)).

Washington courts use a two-step process when deciding whether to terminate parental rights. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010); RCW 13.34.190. First, the Department must show that the statutory requirements in RCW 13.34.180(1) are established by clear, cogent, and convincing evidence. A.B., 168 Wn.2d at 911. The Department must allege and prove:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed . . . from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future.
. . . .
(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1).

Evidence is clear, cogent, and convincing if it shows the ultimate fact at issue is highly probable. In re Dependency of K.S.C., 137 Wn.2d 918, 925, 976 P.2d 113 (1999). On review, the juvenile court's findings will not be overturned if supported by substantial evidence. K.S.C., 137 Wn.2d at 925. Evidence is substantial if it is sufficient to persuade a fair-minded person of the truth of the declared premise. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006). This court does not make credibility determinations or weigh evidence on review. C.B., 134 Wn. App. at 953. "The trial judge has the advantage of having the witnesses before him or her, and deference to the findings is of particular importance in deprivation proceedings." K.S.C., 137 Wn.2d at 925.

Second, once the trial court concludes that the Department has established the factors of RCW 13.34.180(1) by clear, cogent, and convincing evidence, it must then consider whether terminating parental rights is in the best interest of a child. The Department must establish by a preponderance of the evidence that termination is in the best interest of the child. RCW 13.34.190(1)(b). "Only if the first step is satisfied may the court reach the second." A.B., 168 Wn.2d at 911.

Necessary Services

The mother claims the evidence does not support Finding of Fact 2.8 which provides as follows:

> Services ordered under RCW13.34.136 have been expressly and understandably offered or provided, and all necessary services reasonably available, capable of correcting the mother's parental deficiencies within the foreseeable future, have been expressly and understandably offered or provided to the mother.[15]

---

[15] Clerk's Papers (CP) at 46.

To meet its burden under RCW 13.34.180(1)(d), the Department had to establish that it offered or provided the mother with the required services, and that she either failed to engage or waived her right to such services. In re Welfare of S.V.B., 75 Wn. App. 762, 770, 880 P.2d 80 (1994). A parent's unwillingness or inability to avail himself or herself of remedial services within a reasonable period is highly relevant to the determination of whether the elements of RCW 13.34.180 are established. In re Dependency of C.T., 59 Wn. App. 490, 499, 798 P.2d 1170 (1990).

The mother argues that the Department failed to provide "timely transportation assistance during significant portions of the dependency," and therefore, the record does not support the court's finding that the Department expressly and understandably provided all necessary services under RCW 13.34.180(1)(d).[16] The mother draws support for this argument from testimony that for approximately six months after she relocated to Southwest Washington, there were times when her monthly bus vouchers did not arrive at the beginning of the month. The court found that the "Department concedes that there were some problems with the bus vouchers and that many of them got there late, at least in the beginning."[17]

According to the testimony at trial, the mother was initially provided with bus tickets in Snohomish County. When she moved to Southwest Washington, the mother relied on others for transportation or rode the bus. There was a cumbersome process for obtaining monthly bus vouchers from another county and following the move, some vouchers did not arrive a week or more after the first of the month. The mother was

---

[16] Br. of Appellant at 15.
[17] CP at 47.

-10-

also made aware that she could obtain some bus tickets from the Department's office in Vancouver, but she did not do so. By 2015, the issue of untimely monthly bus vouchers was largely resolved. And the mother generally had a vehicle available to her because her father did not use his vehicle for work, rarely drove it, and freely lent it to her. Her father testified that he finally gave the mother his vehicle about three months before trial.

Contrary to the mother's argument, the evidence demonstrates that for the majority of the time, the mother had transportation, either provided by the Department or otherwise available. In addition, the record does not show that the delay in obtaining monthly vouchers created a meaningful barrier to her ability to participate in and complete court-ordered services. According to the mother's own testimony, she discontinued drug treatment because she did not believe she needed treatment and because it interfered with other priorities namely, employment and housing. Likewise, the mother testified that she did not participate in the recommended mental health treatment and random UA testing because these services conflicted with her schedule. She said she was unable to complete parenting classes because of health issues.

Moreover, delays in receiving bus vouchers in 2014 do not explain the mother's failure to engage in services in 2015. Even though, by her own admission, she had stable housing starting in March 2015 and was working only part time at the time of trial, she was not enrolled in treatment. In fact, in spite of the evidence to the contrary, she maintained that drug treatment was no longer recommended.

The court's unchallenged findings accurately reflect that the mother did not substantially participate in services for reasons other than lack of transportation. See In

re Dependency of M.S.R., 174 Wn.2d 1, 9, 271 P.3d 234 (2012) (unchallenged findings

are verities on appeal). For instance, the court found:

> The mother did not complete a chemical dependency program. She has argued to this court and indicated to the Department, and throughout this trial and entire case that she does not actually need treatment and that for her a stable environment and a job are more important than substance abuse treatment.[18]

The court also found that the mother was unable to continue with counselling after one

session because of her "schedule" and that she likewise missed many scheduled UA

tests due to "schedule conflicts."[19]

Substantial evidence supports the finding that the Department timely offered or

provided all necessary services capable of correcting the mother's parental deficiencies

but she failed to successfully complete drug treatment and other services offered.

Likelihood of Remediation

The mother next challenges the court's Finding of Fact 2.21, which provides:

> There is little likelihood that conditions will be remedied so that the child can be returned to the mother in the near future. The mother is currently unfit to parent.[20]

The focus of RCW 13.34.180(1)(e) is whether the identified deficiencies have

been corrected. In re Welfare of M.R.H., 145 Wn. App. 10, 27, 188 P.3d 510 (2008). If

the parent is unable to resolve his or her deficiencies within 12 months after the child

has been declared dependent, the statute's rebuttable presumption applies and the

burden of production shifts to the parent, although the Department must still prove it is

highly probable the parent would not improve in the near future. In re Welfare of T.B.,

---

[18] CP at 46.
[19] CP at 46.
[20] CP at 47.

150 Wn. App. 599, 608, 209 P.3d 497 (2009). Again, a "parent's unwillingness to avail herself of remedial services within a reasonable period is highly relevant to a trial court's determination as to whether [the Department] has satisfied RCW 13.34.180(1)(e)." T.B., 150 Wn. App. at 608. Even if some evidence suggests that the parents may eventually be capable of correcting his or her deficiencies, termination is still appropriate where the deficiencies will not be corrected within the foreseeable future. In re Welfare of A.G., 155 Wn. App. 578, 590, 229 P.3d 935 (2010).

The mother claims that the evidence establishes her parental fitness. She points to the supportive testimony of her current partner and her father and that she had stable housing and employment for most of 2015. The mother also argues that since the only basis for the dependency was substance abuse, and she had been sober for over a year from August 2014, there was no parental deficiency.

The mother's argument is unpersuasive. She does not dispute that she stipulated to having a substance abuse problem and had positive test results for both opiates and methamphetamine. Drug and alcohol evaluators in 2014 and 2015 recommended intensive outpatient drug treatment. She did not complete nor substantially engage in the treatment as ordered by the dependency court. The mother does not challenge the court's finding that her denial of substance abuse was not credible.

Nor does the mother challenge the court's finding that she missed many UAs despite her awareness that the UAs were a court-ordered requirement and essential to her progress. The court found, "In fact, they are a priority for the Department as well as

-13-

this Court."[21] Although there were no subsequent positive test results or other affirmative evidence showing that the mother consumed drugs after August 2014, in light of her failure to participate in consistent UA testing, the evidence does not substantiate her claim of sobriety.

And importantly, while her father and partner described her parenting skills as "excellent" and there was other evidence favorable to her, the mother ignores all contrary evidence.[22] For instance, the psychologist noted the mother's poor choices which put her children's safety at risk, her failure to take responsibility for her actions, and her tendency to blame others. He identified numerous psychological factors and substance abuse issues that would negatively affect her parenting. The volunteer guardian ad litem and social workers who witnessed the mother's interaction with the children, noted concerns about her behaviors with the children, including negative discussions and favoring one child over the other. The social worker assigned to the case at the time of trial testified that she believed there was no likelihood that conditions would be remedied in the foreseeable future given that the mother had completed no services, had made little progress toward reunification in the approximately 21 months since the children were removed from the home, and lacked insight regarding the serious issues that led to the removal of the children. Substantial evidence in the record supports the court's finding that there was little likelihood that conditions would be remedied so the children could be returned to the mother in the near future.

---

[21] CP at 46-47.
[22] RP (Nov. 18, 2015) at 351.

The Mother's Priorities

The mother next challenges portions of two findings, Findings of Fact 2.32 and 2.34, in which the court found that she "has not made the children a priority."[23]

The mother contends that the evidence does not support these findings. She points to evidence of her loving relationship with her children. She contends that housing and financial stability were essential prerequisites to her participation in services and treatment. She argues all of her efforts were directed toward the overarching goal of reuniting with her children.

The mother's argument relies on her own subjective interpretation of the record. It is undisputed that the mother was aware of the dependency order and its requirements and understood the need to engage in the services offered by the Department in order to regain custody. There was no evidence that the mother's participation in any service was contingent upon employment or housing. In a March 2015 order, the court expressly warned the mother that her lack of compliance with the dependency order showed that she was not prioritizing the children.[24] In a document she filed in August 2015, the mother stated that because of her work schedule at the time, which was Tuesday to Friday, from 4:30 a.m. to 1:00 p.m., and Saturday, from 5:00 a.m. to 2:30 p.m., she did not have time to attend sober support meetings or take parenting classes. Based on this schedule, she said she intended to visit the children on Sunday mornings in Everett and do errands and spend time with her fiancé and his daughter on Mondays. She stated, "I agree I have not completed services, but I have

---

[23] CP at 48.
[24] Ex. 20 at 8.

maintained a healthy living environment, a full time job, and transportation."[25] The evidence that the mother gave precedence to other issues over fulfilling the requirements of the dependency order, supports the court's determination that the mother failed to prioritize the children.

Best Interest of the Children

Finally, the mother challenges Finding of Fact 2.33, which provides:

It is in the best interest of the child that all of the parental rights of [the mother] be terminated under RCW 13.34.180 and 190.[26]

She also challenges a portion of Finding of Fact 2.34, wherein the court found:

The mother cannot get over her denial issues, particularly with her substance abuse problem. As the Court has repeatedly said, and the Department has warned, the mother has not made the children a priority in her life. . . . and looking at their best interest, termination of the mother's parental rights is appropriate.[27]

The determination of whether termination of parental rights is in the best interest of the child is a fact specific inquiry. In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). "Where a parent has been unable to rehabilitate over a lengthy dependency period, a court is 'fully justified' in finding termination in the child's best interests rather than 'leaving [the child] in the limbo of foster care for an indefinite period while [the parent] sought to rehabilitate himself.'" In re Dependency of T.R., 108 Wn. App. 149,167, 29 P.3d 1275 (2001) (alterations in original) (quoting In re Dependency of A.W., 53 Wn. App. 22, 33, 765 P.2d 307 (1988)). "When the rights of basic nurture,

---

[25] Ex. 21.
[26] CP at 48.
[27] CP at 48.

-16-

physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail." RCW 13.34.020.

Similar to her other arguments, the mother claims that because she had stability and a safe living environment, and because the evidence demonstrated that she had resolved any drug or mental health issues without treatment, termination was not in the children's best interest. However, while there was evidence that the mother made some positive changes during the dependency and evidence of parental bonds, particularly between the mother and daughter, the juvenile court concluded that this evidence did not outweigh the children's need for permanence and stability. The mother failed to make progress in approximately 21 months in critical areas, including substance abuse and mental health treatment. As the court observed, the mother testified that she agreed to the basis for the dependency so that she would have enough time to complete the requirements ordered by the court. Yet, after more than a year and a half, she had not successfully completed any services, apart from evaluations. The mother does not challenge the court's finding that "the children's need for a permanent living situation is paramount."[28] In light of this unchallenged finding and the mother's lack of progress in critical areas, there is no basis to disturb the court's finding that termination of parental rights was in the children's best interest.

---

[28] CP at 48.

## CONCLUSION

We affirm the termination orders.

_Mann, J_

WE CONCUR:

_Dwyer, J._                    _Appelwick, J._