
IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of | ) |
| | ) No. 77477-8-I |
| N.M.H., (DOB: 10/21/2010) | ) |
| | ) DIVISION ONE |
| A minor child, | ) |
| | ) |
| STATE OF WASHINGTON, | ) |
| DEPARTMENT OF SOCIAL AND | ) |
| HEALTH SERVICES, | ) |
| | ) |
| Respondent, | ) |
| v. | ) UNPUBLISHED OPINION |
| | ) |
| NASSIM JOSEPH HELOU, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| SHELBY JOHNSON, | ) |
| | ) |
| Defendant. | ) |
| | ) FILED: July 23, 2018 |

ANDRUS, J. — Nassim Helou appeals the trial court's order establishing a guardianship for his daughter, N.M.H. Helou contends that substantial evidence does not support the trial court's finding that all necessary and available services capable of correcting his parental deficiencies were offered or provided to him. We disagree, and affirm the guardianship order.

FACTS

N.M.H. was born on October 21, 2010 to Helou and Shelby Johnson. N.M.H's mother, Johnson, has a lengthy history of substance abuse, and in 2014, the Department of Social and Health Services (Department) filed a dependency petition and placed N.M.H. with her maternal great-grandparents, Sharon and John Banks.

When the Department filed the dependency petition, Helou was in the Snohomish County Jail on drug-related charges. The juvenile court ordered Helou to undergo a substance abuse evaluation, a domestic violence assessment, and parenting classes. When a Department social worker, Daniel Althoff, met with Helou at the jail, Helou told him that he was going to be transferred from the jail to an inpatient substance abuse treatment program and that he would contact Althoff after his release.

Helou testified that he completed the program and was released to the community in December 2014. He relapsed soon thereafter. Helou never contacted Althoff during the dependency proceedings and Althoff did not know where Helou was. In approximately May 2016, Althoff was searching for another client when he happened to discover that Helou was in prison in Idaho on forgery and drug-related convictions. Althoff attempted to contact Helou but the prison would not allow him to speak with Helou directly. Althoff discussed Helou's court-ordered services with Helou's corrections counselor. The counselor told Althoff that a parenting class was

available but the prison did not offer substance abuse or domestic violence services at that time.

On June 28, 2017, Johnson filed a petition to appoint the Bankses as N.M.H.'s guardians pursuant to chapter 13.36 RCW. The Department opposed the guardianship, based solely on the fact that the Bankses did not have an approved home study. However, Althoff testified that he had no concerns about N.M.H.'s safety and care in the Bankses' home, that N.M.H. considered it her permanent home, and that she would be deeply traumatized if she were removed.

A one-day guardianship trial took place on August 10, 2017. Helou participated by phone. By this time, N.M.H. was six years old and had lived with the Bankses for almost half of her life. Helou had not seen or had any contact with N.M.H. since she was approximately six months old.

Helou testified that he had been transferred to a prison-based treatment facility where he had just completed a six-month inpatient treatment program. He stated that he had also obtained his General Equivalency Diploma (GED) in prison and participated in a cognitive behavioral therapy program. Helou acknowledged that parenting classes were available to him in prison but he had not taken them because he had been busy with his other services. Helou testified that he would be released sometime in the next couple of weeks to community custody in Washington, where he had a job lined up.

Helou stated that he believed he had completed all of the services necessary for N.M.H. to be placed with him. However, Helou didn't know N.M.H.'s birthdate or how old she was. He acknowledged that he had been incarcerated for all but about 30 months of N.M.H.'s life. Helou admitted that he made no attempts to contact or visit N.M.H. during the dependency proceedings because "my priorities I put to the side because of the drug addiction." Helou also testified that he also has two older daughters whom he had not seen for the past 10 years.

The trial court entered findings of fact and conclusions of law and an order establishing the Bankses as N.M.H.'s guardians. Helou appeals.

## DISCUSSION

To establish a guardianship for a dependent child, the trial court must find, by a preponderance of the evidence, "that it is in the child's best interests to establish a guardianship, rather than to terminate the parent-child relationship and proceed with adoption, or to continue efforts to return custody of the child to the parent." RCW 13.36.040(2). If the parties do not consent to the guardianship, the trial court must also find, by a preponderance of the evidence, the following statutory elements:

> (i) The child has been found to be a dependent child under RCW 13.34.030;
>
> (ii) A dispositional order has been entered pursuant to RCW 13.34.130;

(iii) At the time of the hearing on the guardianship petition, the child has or will have been removed from the custody of the parent for at least six consecutive months following a finding of dependency under RCW 13.34.030;

(iv) The services ordered under RCW 13.34.130 and 13.34.136 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided;

(v) There is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(vi) The proposed guardian has signed a statement acknowledging the guardian's rights and responsibilities toward the child and affirming the guardian's understanding and acceptance that the guardianship is a commitment to provide care for the child until the child reaches age eighteen.

RCW 13.36.040(2)(c).

We review a trial court's factual findings in support of an order establishing a guardianship for substantial evidence. In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015). Substantial evidence exists so long as a rational trier of fact could find that the necessary facts were proved by a preponderance of the evidence. Id. Because the trial court is in the best position to hear testimony and observe witnesses, we do not decide the credibility of witnesses or weigh the evidence. In re Dependency of A.V.D., 62 Wn. App. 562, 568, 815 P.2d 277 (1991).

Helou's sole claim is that Johnson failed to prove that Helou was offered or provided remedial services. The record does not support this claim. Helou's primary parental deficiency was methamphetamine addiction and related criminal

activities. Helou was offered services to address his substance abuse. At the beginning of the dependency proceedings, Helou was released from jail to enter inpatient substance abuse treatment. And Helou testified that he had access to a six-month inpatient treatment program in prison in Idaho and had completed that program. Helou appears to assert that the trial court erred because the Department failed to offer or provide services. But in determining whether adequate services have been provided, "the court may consider any service received, from whatever source, bearing on the potential correction of parental deficiencies." In re Dependency of D.A., 124 Wn. App. 644, 651-52, 102 P.3d 847 (2004).

The Department was also unable to provide for Helou's other court-ordered services while he was in the community, as Helou's whereabouts were unknown for most of the dependency proceedings. Helou admitted that he was actively using drugs at the time and that cooperating with the Department was not a priority. Highly relevant to a court's determination of whether services have been offered or provided is a parent's unwillingness or inability to avail himself or herself to remedial services within a reasonable period. In re Dependency of C.T., 59 Wn. App. 490, 499-50, 798 P.2d 1170 (1990). Once incarcerated, the Department made reasonable efforts to determine what services were available to Helou in prison. A parenting class was available to him, but Helou was too busy fulfilling other requirements to take it. The prison did not offer domestic violence services, and thus, they were not "reasonably available" to Helou.

Substantial evidence supports the trial court's finding that all necessary remedial services had been offered or provided to Helou, as required by RCW 13.36.040(2)(c)(iv). We affirm the trial court's order of guardianship for N.M.H.

Andrus, J.

WE CONCUR:

Leach, J.          Schindler, J.